### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

**QIAN WILLIAMS,**

     **Plaintiff,**

       **v.**

**DALE TAYLOR, et al.,**

     **Defendants.**

**Case No. 1:22-cv-769**

**JUDGE DOUGLAS R. COLE**
**Magistrate Judge Gentry**

### OPINION AND ORDER

There are several ways to appeal or challenge a criminal conviction. But filing a separate action, in the same venue, but before a different judge, raising issues already adjudicated, and vaguely asserting various federal and state law causes of action, including most prominently what appear to be § 1983 or *Bivens* claims, is not among them. Yet that is what Plaintiff Qian Williams seeks to do here.

Before the Court is Magistrate Judge Gentry's April 24, 2024, Report and Recommendation (R&R, Doc. 18), which recommends that the Court dismiss Williams' Complaint (Doc. 1) with prejudice for a host of reasons. Williams has submitted several objections to that R&R. (*See* Docs. 20, 23, 24, 25). For reasons explained below, however, the Court considers only the objections in Williams' June 5, 2024, Objections and Memorandum (Doc. 23). Further, the Court **ADOPTS IN PART** the R&R's disposition, **OVERRULES** Williams' Objections and Memorandum (Doc. 23), and **DISMISSES** his Complaint (Doc. 1) in its entirety.

# BACKGROUND

## A. Factual Background

Plaintiff Qian Williams is an inmate at Edgefield Federal Correctional Institution. (Doc. 1, #17; Doc. 23, #187). He is serving a 420-month prison sentence imposed after a federal jury convicted him of eight counts of drug distribution and trafficking-related crimes, as well as firearms offenses. (*See* J., *United States v. Williams*, No. 1:17-cr-117 (S.D. Ohio Mar. 17, 2020), Doc. 134). The Sixth Circuit summarized the events of his criminal case when it affirmed the judgment and findings of the district court in that case:

> On August 17, 2017, a DEA Agent in a federal-state-local task force applied to a Hamilton County (Ohio) Municipal Court for a search warrant for two neighboring residential houses: 1412 Randomhill Road and 1416 Randomhill Road.[1] The affidavit described the task force's evidence, including multiple large-scale controlled drug buys, that showed probable cause to believe that Qian Williams was a mid- to upper-level dealer of heroin and cocaine, using those houses. The court issued the warrant, and the task force executed the search and seized additional evidence.
>
> On October 5, 2017, the task force obtained another warrant for the 1416 property, executed that warrant, and arrested Williams when he fled the rear of the property carrying drugs. The federal grand jury indicted Williams on eight counts related to heroin, cocaine, and guns.
>
> On July 17, 2018, Williams moved to dismiss the indictment, claiming the warrants were invalid because "[f]ederal agents have no authority to execute a warrant issued by a Hamilton County judge." Following an evidentiary hearing on August 27, 2018, the court denied the motion, explaining that the warrant was obtained and executed by the federal-

---

[1] In fact, the warrant on August 17 covered only the 1412 Randomhill Road address. *See infra* note 7; *United States v. Williams*, No. 1:17-cr-117, 2018 WL 4856536, at *1 (S.D. Ohio Oct. 5, 2018). But that factual discrepancy is immaterial to the remainder of the analysis in this Opinion and Order.

state-local task force which may lawfully execute a state-court-issued search warrant.

Williams moved the court to reconsider, arguing that the DEA Agent violated Federal Criminal Rule 41(b)(1), which allows a state court to issue a warrant to a federal agent when a federal magistrate judge is unavailable. Williams argued that, because the federal agent did not show that a federal magistrate judge was not "reasonably available" to issue the warrant, the state warrant was invalid. The court denied the motion, holding that a joint federal-state task force can use a state-court-issued search warrant based on a state-law crime. *See United States v. Rich*, 2017 WL 4707486, at *8 (E.D. Mich. Oct. 20, 2017); *United States v. Duval*, 742 F.3d 246, 254 (6th Cir. 2014); *United States v. Bennett*, 170 F.3d 632, 635 (6th Cir. 1999).

On October 24, 2018, Williams moved to dismiss under the Speedy Trial Act (STA), but the district court explained that the STA's 70-day rule is subject to excludable periods, such as for the court's consideration of motions, pre-trial proceedings, competency examinations, and other procedural matters. The court recounted the procedural history, determined that Williams had not shown 70 days of non-excluded delay, and denied the motion.

From September 11 to 18, 2019, the Government tried the case to a jury, which convicted Williams on all eight counts. The court sentenced Williams to 420 months in prison.

*United States v. Williams*, No. 20-3310, 2021 WL 3079698, at *1 (6th Cir. July 21, 2021), *cert. denied*, 142 S. Ct. 818 (2022).

On April 4, 2022, Williams moved the trial court under 28 U.S.C. § 2255 to vacate his sentence. (Mot. to Vacate, *United States v. Williams*, No. 1:17-cr-117 (S.D. Ohio Apr. 4, 2022), Doc. 180). While that motion has remained pending, Williams has filed in the ballpark of two-hundred motions, notices, or other filings related to that § 2255 motion or regarding his convictions on that docket.

3

## B.    Procedural Background

But there is more. In addition to the myriad motions he filed in the criminal action, Williams also filed the present suit. In it, he seeks declaratory relief and monetary damages (in the sum of $38.5 million) against twenty-five defendants for events related to his arrest and convictions in that underlying criminal case. (Doc. 1, #1, 9–17). The Defendants are wide-ranging—members of the DEA Task Force who searched the Randomhill locations and/or arrested Williams,[2] Assistant United States Attorneys, Williams' past defense attorneys, the judges who issued the search warrants or tried the criminal case, and others.[3] (Doc. 18, #95; *see also* Doc. 1).

Williams' suit, though, had one problem right off the bat. When he filed his Complaint, he did not pay the required filing fee or seek in forma pauperis status. (*See* Notice of Deficiency, Doc. 2). After the Court gave notice to Williams of this deficiency, he moved for leave to proceed in forma pauperis. (Doc. 3). That motion was referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b) and General Order

---

[2] The Complaint provides no details, however, concerning the roles played by thirteen of the law enforcement Defendants listed. (*See, e.g.*, Doc. 1 ¶ 96, #17).

[3] The Magistrate Judge helpfully categorized these defendants. (*See* Doc. 18, #95 (stating that Williams "primarily challenges the actions of Dale Taylor and Kenneth Baker, who Williams refers to as Task Force Officers of the DEA. … In addition … Williams has sued thirteen other law enforcement agents or officers who were allegedly part of the DEA Task Force. … Williams has also sued two Assistant United States Attorneys (Karl Kadon and Ebunoluwa Taiwo), three defense attorneys (Richard Monahan, Clyde Bennett and Bill Gallagher), former Judge Curt Kissinger of the Hamilton County Municipal Court, United States District Judge Michael R. Barrett, United States Magistrate Judge Karen L. Litkovitz, and two unknown persons (Douglas Wimsatt and Laura Kimble)"). As for Wimsatt and Kimble, Williams asserts in his Objections that these individuals testified at his trial. (*See* Doc. 23, #172 ("Defendants [sic] Laura Kimble falsely testified in front of the petit jury Douglas Wimsatt defendants [sic] also testified falsely about the lab results during plaintiffs [sic] trial and presented false lab reports.")). But a set of Objections is not the proper setting to make additional factual allegations.

4

22-05. (Doc. 6, #43). The Magistrate Judge recommended that the Court deny the motion, noting that the Court had denied Plaintiff's similar request to proceed in forma pauperis in a separate case because Williams had sufficient funds.[4] (*Id.* at #43–46). The Court agreed and adopted the January 2023 R&R on June 26, 2023. (Doc. 8). Williams then paid the required filing fee on August 7, 2023, so the case proceeded. (Doc. 12).

That brings us to the Complaint itself. It is difficult to follow, but recites seven claims. Sometimes it names specific Defendants, but for the most part it just refers generally to "Defendants," requiring the Court to guess whom Williams is specifically discussing in connection with particular allegations. (*See* Doc. 1, #9–17). First, Williams claims that Defendants[5] violated his Fourth Amendment rights[6] based on events occurring on August 17, 2017, concerning Williams' arrest, the search of his

---

[4] The Magistrate Judge correctly noted that Williams has been a regular filer in the Southern District of Ohio. (Doc. 18, #95). In addition to this case, Williams has initiated three other cases related to his underlying criminal case. First, *Williams v. DEA*, which the court dismissed with prejudice. (No. 1:22-cv-613 (S.D. Ohio Feb. 17, 2023), Doc. 9). Second, *Williams v. DEA*, in which the Magistrate Judge recommended dismissal with prejudice in a still-pending Report and Recommendation. (No. 1:22-cv-696 (S.D. Ohio Dec. 18, 2024), Doc. 91). Finally, *Williams v. Taylor*, which the court dismissed for failure to prosecute. (No. 1:23-cv-2 (S.D. Ohio Oct. 30, 2023), Doc. 8).

[5] Williams names only Defendant Taylor in the first Count, but the Magistrate Judge construed this claim as being asserted against Defendants Baker, Municipal Judge Kissinger, and potentially other law enforcement personnel based on other paragraphs in the Complaint. (Doc. 18, #96; *see also* Doc 1 ¶¶ 8–21, #3–5 (detailing the alleged events of August 17, 2017)). The Court agrees with the Magistrate Judge's assessment.

[6] Williams labels this cause of action "4th Amendment violation," but goes on to state "Defendants maliciously wanton [sic], willfully and overzealous manner violated plaintiffs [sic] 4th, 5th, 14th, and 8th Amendment [sic] while under color of authority on August 17, 2017." (Doc. 1 ¶ 44, #9). Despite that statement's placement, the remaining paragraphs in the first count all relate to alleged Fourth Amendment violations. The other amendments Williams lists are the focus of other counts in the Complaint.

person and vehicle, the search of the Randomhill properties, and the related search warrants (Count I).[7] (*Id.* ¶¶ 43–49, #9–10). Second, Williams alleges that a "Due Process Clause violation" occurred because of Defendant Taylor's use of a confidential informant (CI), who was allegedly a fugitive, and Judge Barrett's suppression of impeachment materials related to the CI, denial of a motion related to an independent lab test, and failure to hold an evidentiary hearing (for what, it is unclear) (Count II). (*Id.* ¶¶ 53–61, #10–11; *see also id.* ¶¶ 9, 18, 38–40, #3–4, 8). Third, Williams simultaneously alleges "Obstruction of Justice official proceedings" and "Emotional Distress" (Count III). (*Id.* ¶¶ 62–75, #11–13). Essentially, Williams says that Defendants Taylor and Baker lied about nearly everything—the CI, the search warrants, destruction of evidence, signatures, and presentation of evidence to the grand jury. (*Id.* ¶¶ 62–72, #12–13).

Moving on, Williams alleges that Taylor used excessive force in violation of the Eighth Amendment in connection with Williams' search and arrest (Count IV).[8] (*Id.*

---

[7] Williams alleges that law enforcement officers searched both Randomhill addresses that day. (Doc. 1, #3–5). There is, however, only a search warrant for one Randomhill address, 1412, on that date. True, the court's opinion on Williams' motion to suppress in his criminal case states that the application for the warrant at that Randomhill address referred to activities that had allegedly occurred at both Randomhill address, 1412 and 1416. *United States v. Williams*, No. 1:17-cr-117, 2018 WL 4856536, *1 (S.D. Ohio Oct. 5, 2018). And the opinion further noted that law enforcement had previously searched 1416. *Id.* at *2. But the opinion goes on to note that the warrant requested on August 17, 2017, was for "the 1412 property," and that it was that property that law enforcement "subsequently searched." *Id.*

[8] For the sake of clarity, it bears noting here that there are "'two primary sources of constitutional protection against physically abusive governmental conduct'[–]the Fourth and Eighth Amendments. … The Fourth Amendment's prohibition against unreasonable seizures of the person applies to excessive-force claims that 'arise in the context of an arrest or investigatory stop of a free citizen,' … while the Eighth Amendment's ban on cruel and unusual punishment applies to excessive-force claims brought by convicted criminals serving

¶¶ 76–80, #13–14). He also claims that Taylor sexually assaulted him in the back of a police cruiser on August 17, 2017, in violation of the Fourth, Fifth, and Fourteenth Amendments (Count V), although beyond using the label "sexual assault," he provides no details as to what allegedly occurred. (*Id.* ¶¶ 81–85, #14–15; *see also* ¶¶ 10–13, #3). Williams then turns his focus to "DEA Task Force Supervisor SA Stine" who he claims negligently retained or supervised Defendants Taylor and Baker (Count VI).[9] (*Id.* ¶¶ 86–91, #15–16). Williams mentions these Defendants had "propensities" that Stine should have known about, but does not specify what those propensities were—the closest thing to such an allegation is that the Defendants were individuals who "could falsely accuse somebody like [Williams]." (*Id.* ¶¶ 88–89, #15–16). The only allegation related to training, meanwhile, is that "Taylor testified he did not know how OHIO laws work." (*Id.* ¶ 89, #16). Finally, Williams throws the kitchen sink at the fifteen law enforcement Defendants, asserting violations of ten federal statutes. (Count VII).[10] (*Id.* ¶¶ 92–96, #16–17). But, while he names all fifteen

---

their sentences." *Aldini v. Johnson*, 609 F.3d 858, 864 (6th Cir. 2010) (cleaned up) (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989)). While Williams is currently a convicted criminal, his allegations concern conduct revolving around his arrest. (*See* Doc. 1 ¶¶ 76–80, #13–14). Therefore, while Williams asserts an Eighth Amendment violation, the proper avenue, if any, for a claim of this nature is the Fourth Amendment. The Court will construe Williams as asserting a Fourth Amendment violation.

[9] The Magistrate Judge correctly disregarded the allegations concerning the DEA, (*see* Doc. 1 ¶¶ 89–91, #16), since it is not a named Defendant. (Doc. 18, #97 n.1).

[10] The alleged statutory violations are: (1) fraud on the Court (18 U.S.C. § 1001); (2) obstruction of justice (18 U.S.C. § 1512(c)(2)); (3) sexual assault (18 U.S.C. § 2241); (4) forgery (18 U.S.C. § 470); (5) harboring a fugitive (18 U.S.C. § 1071); (6) kidnapping (18 U.S.C. § 1201); (7) robbery and burglary (18 U.S.C. § 2111); (8) carjacking (18 U.S.C. § 1951); (9) aiding and abetting (18 U.S.C. § 2); and (10) conspiracy (18 U.S.C. § 371). (Doc. 1 ¶ 96, #17).

Defendants in this count, offering names is about all Williams does. He provides no specific details about how any of these individuals allegedly violated any of the cited statutes. And the only specific alleged harm he identifies in connection with any of the claims is a wrongful "loss of liberty" and resulting "emotional distress." (*Id.* ¶¶ 48, 52, 61, 73–75, 80, 85, 90, 94, #9–16).[11]

Magistrate Judge Gentry screened the Complaint under 28 U.S.C. § 1915A, which requires courts to review "a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). That squarely applies here as Williams seeks declaratory judgment and monetary relief from twenty-five government officers or employees. The statute further instructs that "the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint … is frivolous, malicious, or fails to state a claim upon which relief may be granted" or "seeks monetary relief from a defendant who is immune from such relief." *Id.* § 1915A(b)(1)–(2). In other words, the statute allows for sua sponte dismissals based on the screening.

In her Report and Recommendation, issued April 24, 2024, Magistrate Judge Gentry recommends that the Court dismiss every claim in the Complaint with prejudice for one or more reasons. (Doc. 18, #105). In arriving at that result, she started by outlining some basic principles. First, she set out the well-settled rule that

---

[11] True, at one point, Williams also says he "will continue to suffer actual physical harm," (Doc. 1 ¶ 80, #14), because of Defendants' conduct. But the Court construes this as the same "loss of liberty" harm Williams repeats elsewhere, since he does not specify any other physical harm and because Williams is discussing an ongoing harm—that is, his incarceration.

"[c]laims that challenge a conviction or seek immediate or speedier release from custody can only be asserted in a habeas corpus action." (*Id.* at #98 (citing *Preiser v. Rodriquez*, 411 U.S. 475, 500 (1973)). Beyond that, she explained the differences between civil rights lawsuits based on 42 U.S.C. § 1983 (claims against state officials) and *Bivens* actions (claims against federal officials in their individual capacities). (*Id.* at #98–99). Finally, she noted that "Williams does not indicate whether he filed this lawsuit under Section 1983, *Bivens*, or both," so she "construe[d] the Complaint as asserting all of these possible theories." (*Id.* at #99).

Against that backdrop, the Magistrate Judge identified seven problems with Williams' Complaint. Some of these problems were independently fatal to the entire Complaint, while others concerned particular claims or Defendants. But, in aggregate, the problems she identified resulted in a recommendation that the Court dismiss all of Williams' claims with prejudice. (*Id.* at #105). To summarize, the Magistrate Judge found that (1) "to the extent that Williams' request for a declaratory judgment constitutes a direct challenge to his conviction or a request for release, such a request is improper in this civil rights case," (*id.* at #100); (2) "the *Heck* doctrine prohibits Williams from asserting claims that, if successful, would necessarily imply the invalidity of his criminal convictions," which means Counts I, II, III, VI, and VII should be dismissed, (*id.*); (3) based on a two-year statute of limitations, all of Williams' claims are time-barred, (*id.* at #101); (4) that "all claims against Municipal Judge Kissinger, Magistrate Judge Litkovitz, and District Judge Barrett must be dismissed" because of absolute judicial immunity, (*id.* at #101–03);

9

(5) that Assistant United States Attorney Kadon "has absolute prosecutorial immunity for all claims based upon the alleged use of false testimony before the grand jury,"[12] (*id.* at #103); (6) because Williams' "defense attorneys … did not act under color of law," his claims against Monahan, Bennett, and Gallagher must be dismissed, (*id.* at #104); and (7) Williams did not include factual allegations concerning fourteen named Defendants alleged misconduct, meriting their dismissal,[13] (*id.* at #104–05). The Court addresses each of these findings in more detail below.

The R&R advised Williams that failing to object within fourteen days (i.e., by May 8, 2024) could result in forfeiture of his right to the Court's de novo review of the R&R as well as his right to appeal this decision. (*Id.* at #106). *See also Thomas v. Arn*, 474 U.S. 140, 152–53 (1985); *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019) (noting the "fail[ure] to file an[y] objection[s] to the magistrate judge's R&R … [constitutes a] forfeiture" of such objections); 28 U.S.C. § 636(b)(1). But the R&R also noted that, "[t]he Court may extend the fourteen-day objections period if a timely motion for an extension of time is filed." (Doc. 18, #106). On May 3, 2024,[14] Williams

---

[12] But what about the other Assistant United States Attorney named as a Defendant— Ebunoluwa A. Taiwo? The Magistrate Judge correctly noted that Williams "has made no factual allegations against AUSA Taiwo." (Doc. 18, #103). And even with respect to AUSA Kadon, Williams put forth only one factual allegation—that "Kadon presented perjury and Fraud on the Court at Plaintiffs [sic] October 18, 2017 grand Jury hearing." (Doc. 1 ¶ 28, #6). As for Taiwo, the Court cannot reasonably infer that any claim was asserted against her. Thus, the Court dismisses the claims against Taiwo.

[13] The Court agrees that there are no factual allegations concerning the following named Defendants: Richard Bernecker, Jarguir, Laura Kimble, Anderson Muse, Eylse Roddy, Stacie Modesitt Schmidt, Ken Smith, Ebunoluwa A. Taiwo, David Theabold, Charles Vanover, Chad Whitford, Douglas Wimsatt, Joe Zevcheck, and David Zummach.

[14] The docket suggests a May 10, 2024, date for that motion. That, however, is the date the Court *received* the motion. And under the prison mailbox rule, inmate filings are assessed for

took the Court up on that offer, filing a Motion for Thirty Day Extension of Time to File Objections to Magistrate Report and Recommendation, in which he requested a 30-day extension to "thoroughly address all portions of the report and recommendation[.]" (Doc. 19, #107–08). The Court received that motion on May 10, 2024, and the Court granted it on May 13, 2024, thereby extending the deadline to object to June 7, 2024. (5/13/24 Not. Order). Perhaps out of an abundance of caution, Williams nonetheless submitted objections on May 7, 2024, and those were received by the Clerk's Office on May 17, 2024.[15] (Doc. 20, #144). But, as he filed these objections before the Magistrate Judge granted the extension, it is perhaps unsurprising that Williams followed up by submitting another set of objections on May 30, 2024 (received by the Clerk on June 5, 2024). (Doc. 23, #189). And, as the Magistrate Judge had ordered Williams to "file **A SINGLE DOCUMENT** that contains all of his objections," (Doc. 18, #105 (emphasis in original)), the Court will consider only the second set of objections filed,[16] which the Court notes correspond almost entirely with his first set of filed objections, except for some minor numerical labeling differences and the appearance of an additional objection in the second filing.

---

timeliness based on when they are given to jail authorities rather than the day the court receives them. *Cretacci v. Call*, 988 F.3d 860, 865–66 (6th Cir. 2021). "[T]he prison mailbox rule applies only to prisoners who are not represented by counsel and are proceeding pro se" as Williams is here. *Id.* at 867. Here, Williams provided the motion to prison officials for mailing on May 3, 2024. (Doc. 19, #109).

[15] Again, under the prison mailbox rule, *see supra* note 14, the effective date of these objections was May 7, 2024.

[16] And for that same reason, the Court **DENIES** Williams' Motion To Supplement Objection: 2 (Doc. 24) and **STRIKES** Williams' Memorandum to Objection 2 that was Supplemented (Doc. 25). The Court notes that neither filing contains arguments distinct from those already raised in Williams' objections—at least so far as the Court can tell.

(*Compare* Doc. 20, #113–23, *with* Doc. 23, #156–72). So given the addition of that objection, the later-filed objections also appear to be more comprehensive.

All told, Williams lodges eight objections to the R&R.[17] (Doc. 23, #156–72). Taken as a whole, the objections challenge the entire R&R. The Court will detail these objections more fully as it takes them in turn along with the Magistrate Judge's findings to which they apply.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 72(b)(3), "district courts review an R&R de novo after a party files a timely objection." *Bates v. Ohio Dep't of Rehab. & Corr.*, No. 1:22-cv-337, 2023 WL 4348835, at *1 (S.D. Ohio July 5, 2023). But that review extends only to "any portion to which a proper objection was made." *Id.* (citation omitted). In response to such an objection, "the district court may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." *Id.* (cleaned up) (quoting Fed. R. Civ. P. 72(b)(3)). But a "proper" objection means a specific one. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995). If a party makes only a general objection—one which fails to set forth the grounds with any specificity—that "has the same effect[] as would a failure to object." *Howard v. Sec'y of Health & Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). In other words, a litigant must identify, with sufficient clarity, each issue in the report and recommendation to which he objects, or else the litigant forfeits the Court's

---

[17] While it is stylized as seven objections, Objection Four is split out into two parts, so the Court will consider this as two separate objections. (*See* Doc. 23, #160–67).

de novo review of the issue. *Miller*, 50 F.3d at 380 ("The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious.").

That said, the Court also notes that a pro se litigant's pleadings, like Williams' Complaint and his objections, are to be construed liberally and are subject to less stringent standards than formal pleadings filed by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Franklin v. Rose*, 765 F.2d 82, 84–85 (6th Cir. 1985). But even so, pro se litigants still must comply with the procedural rules that govern civil cases. *McNeil v. United States*, 508 U.S. 106, 113 (1993). And "[t]he liberal treatment of pro se pleadings does not require lenient treatment of substantive law." *Johnson v. Stewart*, No. 08-1521, 2010 WL 8738105, at *3 (6th Cir. May 5, 2010) (citation omitted).

For unobjected portions of the R&R, "the advisory committee notes to Federal Rule of Civil Procedure 72(b) suggest that the Court still must 'satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Redmon v. Noel*, No. 1:21-cv-445, 2021 WL 4771259, at *1 (S.D. Ohio Oct. 13, 2021) (collecting cases).

Finally, the Court notes it is reviewing the Complaint under its screening authority under 28 U.S.C. § 1915A, which permits sua sponte dismissals for failure to state a claim upon which relief may be granted. Sua sponte dismissals under these provisions are governed by the same standards that apply to motions to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *Hill v. Lappin*,

630 F.3d 468, 470–71 (6th Cir. 2010). Under that standard, a "complaint must present sufficient facts to 'state a claim to relief that is plausible on its face.'" *Robbins v. New Cingular Wireless PCS, LLC*, 854 F.3d 315, 319 (6th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In making that determination, the Court "construe[s] the complaint in the light most favorable to the plaintiff." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (cleaned up). But that does not mean the Court must take everything Plaintiff alleges at face value, no matter how unsupported. The Court may disregard "naked assertions" of fact, legal conclusions, or "formulaic recitations of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).

## LAW AND ANALYSIS

### A.     The R&R

As mentioned, the R&R begins by surveying the generally applicable law for prisoner civil rights litigation. (Doc. 18, #98–99). This broad focus is necessary largely because Williams' Complaint does not clarify the basis for his claims against the various Defendants. (*See* Doc. 1, #9–17). But given that Williams had named both state and federal officials as defendants, the Magistrate Judge correctly explained that claims against the former typically arise under 42 U.S.C. § 1983, while those against the latter fall under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 397 (1971). (Doc. 18, #98–99). *See Hernandez v. Mesa*, 589 U.S. 93, 109 (2020) (citation omitted) ("42 U.S.C. § 1983 … permits the recovery of damages for constitutional violations by officers acting under color of *state* law

14

[whereas] *Bivens* [i]s a 'more limited' 'federal analog' to § 1983."). Moreover, *Bivens* claims can only proceed against federal officers in their individual capacity and are exclusively for monetary damages. *Berger v. Pierce*, 933 F.2d 393, 397 (6th Cir. 1991) (explaining that "a *Bivens* claim may not be asserted against a federal officer in his official capacity"); *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001) (stating that *Bivens* recognized "an implied private action *for damages* against federal officers" (emphasis added)).

However, the R&R also notes one similarity between these two types of claims—"[a] plaintiff must prove two elements to prevail on either type of claim: (1) that he or she was deprived of a right secured by the Constitution or laws of the United States; and (2) that the deprivation was caused by a person acting under color of law." *Robertson v. Lucas*, 753 F.3d 606, 614 (6th Cir. 2014). Since Williams did not specifically mention § 1983 or *Bivens* in his Complaint, the Magistrate Judge construed his Complaint as asserting both—each against the applicable defendants. (Doc. 18, #99).

Here the Court arrives at Williams' First Objection. (Doc. 23, #156). But it appears to be not so much an objection as an attempt to clarify. Specifically, Williams states that he is suing under § 1983 "against state officials for the illegal warrantless stop and warrantless arrest and warrantless search on August 17, 2017," and under "*Bivens* against federal officials for the same." (*Id.* at #156). He then cites the same caselaw as the Magistrate Judge for the same propositions. In other words, Williams' "objection" instead amounts to a confirmation that the Magistrate Judge had

15

construed Williams' claims in his intended manner. So that objection identifies no error.

1.    **The Remedy for Challenging Criminal Convictions is Through Habeas Proceedings Under 28 U.S.C. § 2255.**

Moving along, the Magistrate Judge proceeded to address the first seemingly fundamental problem with Williams' Complaint: that, at least to the extent that it seeks declaratory relief, it could be understood as directly challenging his underlying convictions—convictions the Sixth Circuit has affirmed. (Doc. 18, #99–100). If that is what Williams seeks to do, that is a problem. As the Magistrate Judge rightly noted, "courts have uniformly held that claims asserted by federal prisoners that seek to challenge their convictions … shall be filed in the sentencing court under 28 U.S.C. § 2255." *Charles v. Chandler*, 180 F.3d 753, 755–56 (6th Cir. 1999). In other words, Williams cannot attack his convictions by filing a separate action in a different court, other than through habeas.

But, in his objections, Williams insists that he is not seeking to directly challenge his conviction. Indeed, he reinforces that point time and again. (*E.g.*, Doc. 23, #153, 156–57).

At the end of the day, though, the R&R does not appear to actually recommend dismissing any claim or claims on the grounds that they fall into the direct-challenge category. Accordingly, the Court determines it need not reach the question of whether any aspects of Williams' claims are properly understood as directly challenging his conviction.

### 2. The *Heck* Bar Applies to All of Williams' Claims.

Rather, the bigger problem for Williams is that the prohibition against collateral attacks on criminal convictions extends not only to *direct* challenges to such convictions, but also to *implied* challenges. In other words, a prisoner cannot maintain a § 1983 claim when success on that claim would necessarily imply the invalidity of a conviction, without first successfully challenging that conviction in habeas (or on direct appeal). *Heck v. Humphrey*, 512 U.S. 477, 486–89 (1994); *Preiser*, 411 U.S. at 500. Such claims, just like direct challenges, are "*Heck*-barred." *See, e.g.*, *Kitchen v. Whitmer*, 106 F.4th 525, 531 & n.2 (6th Cir. 2024). And the bar that *Heck* imposes extends to *Bivens* actions, as well as § 1983 actions. *See Robinson v. Jones*, 142 F.3d 905, 906–07 (6th Cir. 1998) ("While *Heck* concerned an action brought under 42 U.S.C. § 1983, we adopt the rule espoused by the Fifth and Eleventh Circuits that the *Heck* holding applies equally to an action brought under *Bivens*.") (citing cases). Here, the Magistrate Judge recommends that "Williams' claims asserting violations of the Fourth Amendment (Count One), violations of due process (Count Two), obstruction of justice (Count Three), negligent retention and/or supervision (Count Six), and an assortment of federal crimes (Count Seven) be dismissed" because they are *Heck*-barred. (Doc. 18, #100). The Court agrees.

*Heck* "address[d] a common situation: Criminal defendants often get convicted of a crime and then seek damages under § 1983 on the ground that public officials violated the Constitution while investigating or prosecuting the crime." *Chaney-Snell v. Young*, 98 F.4th 699, 707 (6th Cir. 2024). The *Heck* Court imposed a hurdle for prisoners seeking to advance such claims—"in order to recover damages

for allegedly unconstitutional conviction or imprisonment, *or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid*, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged … or called into question by a federal court's issuance of a writ of habeas corpus." 512 U.S. at 486–87 (emphasis added). So, for example, the plaintiff in *Heck*, much like Williams here, had filed a pro se action naming prosecutors and law enforcement personnel as defendants and accusing them of engaging in an unlawful investigation, destroying evidence, and presenting flawed evidence at trial. *See id.* at 478–79. But "[b]ecause a successful unlawful investigation claim would [have] 'challenge[d] the legality of the conviction,' the claim needed to go through habeas instead of § 1983." *Kitchen*, 106 F.4th at 537–38 (quoting *Heck*, 512 U.S. at 490). Just so here. Williams' § 1983 and *Bivens* claims can only proceed "if (1) they do not seek an 'injunction ordering immediate or speedier release into the community,' and (2) 'a favorable judgment would not necessarily imply the invalidity of their convictions or sentences.'" *Id.* at 539 (quoting *Skinner v. Switzer*, 562 U.S. 521, 533–34 (2011)).[18]

That creates a problem for Williams. Even crediting his argument that he is not seeking immediate or speedier release into the community, (Doc. 23, #153, 173–74), Williams' claims still fail under the second half of *Heck*'s inquiry. That is, all agree that Williams' convictions have not been reversed, expunged, or called into question by a federal court's issuance of a writ of habeas corpus. And, while the

---

[18] *Heck* also applies equally to suits for damages or declaratory judgment. *Edwards v. Balisok*, 520 U.S. 641, 648 (1997).

Magistrate Judge did not detail exactly *why* she found that five out of his seven claims (Counts I, II, III, VI, VII) "necessarily impl[ied] the invalidity of [Williams'] criminal convictions," a review of them shows that she is in fact correct to recommend their dismissal on those grounds. (Doc. 18, #100).

To see why that is so, the Court begins by taking a closer look at what it means to "imply the invalidity" of a conviction. Admittedly, this is a topic that has generated significant case law, adopting a variety of formulations, some of which are in tension with one another. *Compare, e.g.*, *Hayward v. Cleveland Clinic Found.*, 759 F.3d 601, 609 (6th Cir. 2014) (assessing whether a claim "contradicts an element of [plaintiff's] underlying criminal offense"), *with Holson v. Good*, 579 F. App'x 363, 365 (6th Cir. 2014) (assessing whether a contested search produced "evidence supporting [plaintiff's] conviction and no legal doctrine could save the evidence from exclusion"). Fortunately, though, the Court need not dive into that morass. That is because one fixed star in the *Heck* constellation is that a plaintiff cannot pursue a claim where the alleged "compensable injury" is "the 'injury' of being convicted and imprisoned." *Heck*, 512 U.S. at 487 n.7; *Hunt v. Michigan*, 482 F. App'x 20, 21 (6th Cir. 2012) (finding plaintiff's illegal search claim *Heck*-barred after plaintiff argued there was an independent compensable injury associated with the alleged illegal search, but "the complaint … reveal[ed] no such claim"). In other words, a prisoner pursuing a § 1983 (or *Bivens*) claim must point to a compensable injury *other than* the prisoner's loss of liberty resulting from a conviction. And that makes sense. To say that the loss

of liberty was wrongful in that situation necessarily implies that the conviction was wrongful, as well, thus bringing the claim within *Heck*'s ambit.

That rule dooms each of the five counts on which the Magistrate Judge recommended *Heck*-based dismissal. In each, the only specific injury that Williams identifies is a "loss of liberty" (and alleged emotional distress he is suffering in connection with that). He directs Count I, for example, at his arrest and search, and says that they resulted in his "loss of liberty and property," and "security," resulting in "emotional distress." (Doc. 1 ¶¶ 48, 52, #9–10). But if he wrongfully "los[t] his liberty" (or if the defendants wrongly took his property during the search) that would necessarily mean that his conviction is invalid.[19] Count II likewise claims as an injury "the loss of his liberty and extreme and severe emotional distress." (*Id.* ¶ 61, #11). The same is true of Count III. (*Id.* ¶ 73, #13 (pointing to "severe emotional distress and loss of liberty" as his alleged harms)). Counts VI and VII, meanwhile, just point to "the harm to Plaintiff, as described above," (*id.* ¶ 90, #16), or an ambiguous assertion of "actual[] harm" (*id.* ¶ 94, #16), each of which then lead back to the allegedly wrongful loss of liberty. In sum, as to each of the five counts, Williams has not identified any compensable alleged injury beyond his loss of liberty, and that is simply a non-starter unless and until he successfully challenges his convictions.

Williams nonetheless objects that he "is not seeking to Dismiss his Criminal Convictions" and that "the *Heck* doctrine does not apply because by [sic] granting damages would not necessarily imply invalidating his criminal convictions because

---

[19] As to Williams' alleged loss of "security," he provides no further description of what that means or how his loss of security amounts to a compensable injury.

that [sic] for the district court in his 2255 motion." (Doc. 23, #156–57). In his "Memorandum," Williams attempts greater specificity: "The *Heck* doctrine is inapplicable in plaintiff's case because he challenge [sic] the actions of State and federal officers, that led to part of his conviction." (*Id.* at #173). But that objection highlights the problem—challenges to the process that led to the conviction can be included in what *Heck* prohibits, depending on the particular nature of the challenge. And Williams' repeated invocation that he "is not seeking immediate or speedier release" does not help him either. (*Id.* at #153, 173–74). That describes only *half* of what *Heck* bars. *Kitchen*, 106 F.4th at 539. As explained above, *Heck* also bars claims where success would imply the invalidity of his convictions, and any claims, like Williams' here, that seek to impose liability for a wrongful loss of liberty fall into that category.

Trying a different approach, Williams also argues that *Wolff v. McDonnell*, 418 U.S. 539 (1974), allows § 1983 prisoner claims to proceed for some types of "procedural" challenges. (Doc. 23, #173–74). On this he is partially correct. *See Wilkinson v. Dotson*, 544 U.S. 74, 81 (2005) ("*Wolff* makes clear that § 1983 remains available for procedural challenges where success in the action would not necessarily spell immediate or speedier release for the prisoner."). But generally speaking the "procedural challenges" to which *Wolff* applies are those procedures that a prisoner encounters *while incarcerated*, *see Wolff*, 418 U.S. at 543–44 (involving challenges to a prison's practices and regulations); *Edwards v. Balisok*, 520 U.S. 641, 643 (1997) (concerning good-time credit procedures at a prison), or that seek to impose additional

21

consequences for prior convictions, *see Powers v. Hamilton Cnty. Pub. Def. Comm'n*, 501 F.3d 592, 597 (6th Cir. 2007) (regarding public defender's office "custom of failing to seek indigency hearings on behalf of criminal defendants facing jail time for unpaid fines" related to an existing conviction).[20] Absent from that list (not surprisingly), are "procedural challenges" to the very procedures that law enforcement (or court) personnel used in connection with securing the conviction in the first instance. But challenges to such procedures are exactly what Williams seeks to mount in Counts I, II, III, VI, VII, and exactly what *Heck* prohibits, at least absent separate compensable injury that Williams does not allege. Because the Court agrees with the Magistrate Judge's assessment, and is unpersuaded by Williams' arguments to the contrary, it adopts her recommendations and overrules Williams' objections.[21]

Indeed, the Court goes a step further. Specifically, while the Magistrate Judge did not reach the issue, the Court concludes that Williams' excessive force (Count IV) and sexual assault (Count V) claims are *Heck*-barred as well. That is because, after reviewing the factual allegations supporting each, it becomes clear that Williams once

---

[20] The Court pauses here to emphasize that "procedural" challenges do not open the floodgates for prisoners' § 1983 claims, because as the *Powers* court noted "*Balisok* cautions courts to scrutinize 'the nature of the challenge to the proceedings' because even challenges to procedures 'could be such as necessarily to imply the invalidity of the judgment.'" 501 F.3d at 604 (quoting *Edwards v. Balisok*, 520 U.S. 641, 645 (1997)).

[21] The Court will not spend much time on Williams' argument that "the *Younger* doctrine applies here as well in violation of his Tenth Amendment." (Doc. 23, #174). It doesn't. *Younger* abstention prevents a federal court from staying or enjoining "pending state court proceedings except under special circumstances." *Younger v. Harris*, 401 U.S. 37, 41 (1971). Here, there are no pending state court proceedings, and even if there were, Williams does not seek to stay or enjoin such a proceeding. Williams' "request to have Judge Curt Kissinger be available for a deposition, in regards to the alleged search warrants," is a similarly perplexing aspect of his objection. (Doc. 23, #174). It is simply irrelevant.

again fails to identify any specific compensable harm that he allegedly suffered other than his loss of liberty. (*See* Doc. 1 ¶¶ 80, 85, #14–15). So far as the Court can tell, the Complaint makes exactly two allegations relating to these claims. First, Williams alleges that on August 17, 2017, he was "taken out of his vehicle at gun point and searched and handcuffed without probable cause or [sic] arrest warrant and place[d] in the back of the police cruiser." (*Id.* ¶ 11, #3). Next, he says he "was assaulted by Dale Taylor while in the back of the cruiser and sexually assaulted." (*Id.* ¶ 13, #3). But neither alleges any specific physical injury that Williams claims to have suffered as a result. True, the labels "assault" or "sexual assault" clearly *could* reference activities that resulted in a physical harm to him. Whether they in fact *do*, though, turns on what Williams is alleging actually to have happened to him. And Williams declines to provide *any* detail on *how* Defendant Taylor is alleged to have assaulted or sexually assaulted him, beyond generally pointing to the "search tactics" that Taylor used. (*Id.* ¶ 84, #15 ("Defendants [sic] use of his search tactics amounted to sexual assault as alleged herein.")). His use of those labels, then, is exactly the kind of "formulaic recitation of the elements" that a Court must decline to credit under a motion to dismiss standard. *Iqbal*, 556 U.S. at 678 (cleaned up). So, to recap, the only specific conduct to which Williams points is the use of a firearm and handcuffs to effectuate an arrest, which, he says, constitutes excessive force, assault, or sexual assault. But much like the plaintiff in *Hunt*, while he may be entitled to pursue an action for any resulting physical injuries, his "complaint … reveal[ed] no such claim."

482 F. App'x at 21.[22] Rather, his stated injury is his loss of liberty.  And thus, for the reasons already discussed, *Heck* bars him from pursuing those claims here.

Accordingly, the Court finds that all of Williams' claims are *Heck*-barred.

**3.     The Statute of Limitations Bars All of Williams' Claims.**

Moreover, even if the claims were not *Heck*-barred, they would fail for other reasons. First, they would be time-barred.[23] *See id.* ("To the extent his claims are not

---

[22] While "[t]he Fourth Amendment prohibits unduly tight or excessively forceful handcuffing during the course of a seizure ... a plaintiff must show three elements[, one of which is] that the plaintiff experienced some physical injury resulting from the handcuffing." *Macon v. Hopkins*, No. 1:11-cv-1191, 2012 WL 112298, at *4 (W.D. Mich. Jan. 12, 2012) (quotation omitted). Williams has not alleged any physical injury.

[23] While the Court concludes that Williams' claims are time-barred, there is one avenue by which *some* of his claims could be timely asserted in the future, contingent on potential (though perhaps unlikely) events. That avenue exists because, in addition to establishing a bar on proceeding on certain claims, "*Heck* [also] established a delayed accrual date in cases involving challenges to an *invalid conviction or sentence.*" *Harrison v. Michigan*, 722 F.3d 768, 772 (6th Cir. 2013) (emphasis in original). Under this delayed-accrual rule aspect of *Heck*, "a damages claim for a wrongful criminal conviction or sentence does not accrue until the conviction 'has been reversed on direct appeal, expunged by executive order ... or called into question by a federal court's issuance of writ of habeas corpus.'" *Id.* at 773 (quoting *Heck*, 512 U.S. at 487). But *Heck*'s delayed-accrual rule does not apply to certain claims. *See Wallace v. Kato*, 549 U.S. 384, 393 (2007) (explaining that while *Heck* may bar a Fourth Amendment false arrest claim until the conviction is overturned, the claim nonetheless accrues on the date of the arrest); *see also Hornback v. Lexington-Fayette Urb. Cnty., Gov't*, 543 F. App'x 499, 502 (6th Cir. 2013) (explaining that "[c]laims of illegal search are analogous to claims of false arrest, as a potential plaintiff very often has a complete cause of action before criminal proceedings commence ... [so plaintiff] had a colorable claim for the violation of his Fourth and Fourteenth Amendment rights on the day of the search, and the statute of limitations began to run on that date"). So say Williams succeeds within habeas (or his conviction is expunged by executive order). In that event, *Heck*'s deferred-accrual rule would likely apply to some of his claims, but not others. His Fourth and Fourteenth Amendment claims tied to the events on August 17, 2017, for example, would not receive the benefit of *Heck* deferred accrual and would be untimely. *See Kato*, 549 U.S. at 393. Simply, Williams is out of luck for those claims for the reasons described in the Court's statute of limitations analysis. In contrast, his claims for obstruction of justice or due process claims related to events occurring during trial almost certainly would receive the benefit of *Heck*'s deferred-accrual rule. But again, this would be the case only if Williams were successful in habeas (or his conviction was expunged).

barred by *Heck*, they do not benefit from the rule that a claim so barred does not accrue until the state conviction has been overturned."). Both § 1983 and *Bivens* borrow the statute of limitations from state law. Here Ohio Revised Code § 2305.10 provides the applicable period, which is two years. *Browning v. Pendleton*, 869 F.2d 989, 990 (6th Cir. 1989); *Ruff v.* Runyon, 258 F.3d 498, 500 (6th Cir. 2001) (stating that *Bivens* claims "are governed by Ohio's two-year statute of limitations" found in Ohio Rev. Code § 2305.10); *see also Green v. City of Southfield*, 759 F. App'x 410, 414 (6th Cir. 2018) (explaining that "[i]n § 1983 actions, federal courts borrow state statutes of limitations"). Williams is deemed to have filed this lawsuit on December 19, 2022. (*See* Doc. 1, #17). *See Cretacci v. Call*, 988 F.3d 860, 865–66 (6th Cir. 2021). So any claims accruing before December 19, 2020, are time-barred.

One important note on that front—while federal courts borrow state statute of limitations in these cases, "the accrual date of a § 1983 cause of action is a question of federal law that is not resolved by reference to state law." *Wallace v. Kato*, 549 U.S. 384, 388 (2007) (emphasis omitted). Under federal law, claims accrue when a plaintiff "knows or has reason to know that the act providing the basis of his or her injury has occurred." *Cooey v. Strickland*, 479 F.3d 412, 416 (6th Cir. 2007) (quotation omitted); *see also Snyder-Hill v. Ohio State Univ.*, 48 F.4th 686, 698 (6th Cir. 2022) ("[W]e have long held that the discovery rule applies in the § 1983 context."). And "[a] plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence." *Boyer v. Clinton Cnty. Sheriff's Off.*, 645 F. Supp. 3d 815, 821 (S.D. Ohio 2022); *see also Trzebuckowski v. City of Cleveland*, 319 F.3d 853,

856 (6th Cir. 2003) (explaining that courts should "look to the event that should have alerted the typical lay person to protect his or her rights").

How does that play out here? The Magistrate Judge found that the allegations underlying Williams' claims occurred between August 17, 2017 (the date of his first arrest) and September 18, 2019 (the date of his criminal convictions). (Doc. 18, #101). So even assuming Williams' claims started accruing at the latter date, Williams' claims are time-barred.[24]

Williams objects that there is a different, even later, accrual date. (Doc. 23, #157). First, he says July 21, 2021—the date the Sixth Circuit decided his appeal in *United States v. Williams*, No. 20-3310, 2021 WL 3079698 (6th Cir. July 21, 2021)— is when his claims accrued. Next, he suggests the accrual date should be January 10, 2022—the date the Supreme Court denied his writ of certiorari in *Williams v. United States*, 142 S. Ct. 818 (2022). (*Id.*). Along with these two alternative date proposals, Williams argues that the tolling provisions contained in Ohio Revised Code § 2305.16 should apply because of his "disability of imprisonment," and that equitable tolling should apply for various reasons—COVID-19, prison security matters, and his lack of access to the prison law library. (Doc. 23, #157–59, 174–75).

None of these objections have merit. As to the dates Williams proposes in connection with his direct appeal, those decisions do not alter Williams' exercise, or

---

[24] But the Court notes that many of Williams' claims started accruing on the former date. For example, the unreasonable search, excessive force, and sexual assault claims all accrued on August 17, 2017, because that is when Williams learned of the complained-of searches and events. *Boyer v. Clinton Cnty. Sheriff's Off.*, 645 F. Supp. 3d 815, 822 (S.D. Ohio 2022). By directly bearing witness to, or experiencing, those events, Williams had "reason to know of his injury" at that time. *Id.* at 821.

lack thereof, of reasonable diligence. So they do not alter the accrual date. Next, Williams' "disability of imprisonment" argument for tolling, which he bases on Ohio Revised Cole § 2305.16, is misplaced. True, state law generally governs tolling for § 1983 and *Bivens* actions. *See Wershe v. City of Detroit*, 112 F.4th 357, 366 (6th Cir. 2024), *cert. denied sub nom. Wershe v. Detroit*, No. 24-545, 2025 WL 247463 (U.S. Jan. 21, 2025) ("State law presumptively governs the tolling of Wershe's § 1983 claims against the City Defendants and his *Bivens* claims against the individual federal Defendants, so the availability of tolling for those claims will ordinarily depend on the contours of state law."); *Bishop v. Child.'s Ctr. for Developmental Enrichment*, 618 F.3d 533, 537–38 (6th Cir. 2010) (finding Ohio Revised Code § 2305.16 was not inconsistent with the federal policies underlying § 1983); *Heard v. Strange*, __ F.4th __, No. 23-1624, 2025 WL 326216, at *2–*4 (6th Cir. 2025) (finding Michigan's tolling rules are not inconsistent with the PLRA). So Williams is not wrong to point to that statutory provision. (Doc. 23, #174–75). *See also Williams v. Dayton Police Dep't*, 680 F. Supp. 1075, 1079–80 (S.D. Ohio 1987). The problem is that he is relying on an *outdated* version of that statute, and Ohio law has changed to exclude tolling because of imprisonment. *Haag v. Vill. of Camden*, 23 F. App'x 384, 385 (6th Cir. 2001) ("Effective January 13, 1991, Ohio law no longer tolls the statute of limitations because of a plaintiff's imprisonment."); *see also* Ohio Rev. Code § 2305.16.[25]

---

[25] Additionally, there is no other statutory tolling provision that applies under Ohio law. *See Boyer*, 645 F. Supp. 3d at 825. Further, while the Ohio General Assembly passed a COVID-19 relief bill, which tolled the period between March 6, 2020, and July 30, 2020, for all statutorily established statutes of limitations, Williams would have needed the entire period between September 18, 2019, and December 19, 2020, to have been tolled in order for his claims to have been timely. *See Roach*, 2022-Ohio-2106 ¶ 9.

Equitable tolling does not apply here either. Ohio law instructs that this doctrine "be applied sparingly and only in exceptional circumstances." *Boyer*, 645 F. Supp. 3d at 825 (quoting *Roach v. Vapor Station Columbus, Inc.*, 2022-Ohio-2106 ¶ 8 (10th Dist.)).[26] Consistent with that, Ohio courts typically limit the doctrine's application "to circumstances in which a litigant is intentionally misled or tricked into missing the filing deadline." *Id.* That has not happened here.

Williams' COVID-19, security, and prison-library access arguments fare no better. The Court is unaware of any Ohio court to apply equitable tolling to any of these circumstances. *See Roach*, 2022-Ohio-2106 ¶¶ 11–13 (declining to apply equitable tolling despite plaintiff's argument that COVID-19 was an extraordinary circumstance); *cf. State v. Martin*, 2021-Ohio-4290 ¶ 5 (7th Dist.) (explaining that reasons such as restricted access to the prison law library, prison riots, or lockdowns do not constitute "good cause for late filing of an application to reopen" an appeal). And even within the federal system, "[c]ourts have consistently held that general allegations of … lack of access to legal materials are not exceptional circumstances warranting equitable tolling." *Andrews v. United States*, No. 17-1693, 2017 WL 6376401, at *2 (6th Cir. Dec. 12, 2017). Certainly Williams has pointed to none. As for COVID-19, some federal courts have allowed equitable tolling in "certain circumstances" when "defendants [] had been pursuing their rights diligently and would have timely filed if not for external obstacles caused by COVID-19." *United*

---

[26] Williams would fare no better under federal equitable tolling principles either. *See Wallace*, 549 U.S. at 396 (2007). ("Equitable tolling is a rare remedy to be applied in unusual circumstances, not a cure-all for an entirely common state of affairs.").

*States v. West*, 578 F. Supp. 3d 962, 966 (N.D. Ohio 2022). But even if Williams could take advantage of federal equitable tolling principles, Williams has made no such showing here. He argues that he was reasonably diligent because he had "his family send him his legal papers about the search warrants *in December 2022* once held the [sic] information and the affidavits and the warrants and noticed that it was an illegal search he filed his complaint[.]" (Doc. 23, #158 (emphasis added)). To be clear—that is the same month Williams filed this suit. (*See* Doc. 1). But, by his own admission, that means that Williams began acting diligently—securing the papers he needed to investigate his claims—long after the documents were initially available to him (that is, during trial).

Accordingly, the Court declines to apply equitable tolling and all of Williams' claims are time-barred.[27]

### 4. Judicial Immunity Shields the Judicial-Officer Defendants.

Beyond the issues relating to the substance of Williams' claims, Williams also has problems as to at least some of the parties he seeks to sue. Williams named former Judge Curt Kissinger of the Hamilton County Municipal Court, United States District Court Judge Michael R. Barrett, and United States Magistrate Judge Karen L. Litkovitz as Defendants. (*See id.* at #1). The R&R recommends that, because Williams challenges these Defendants' judicial acts, the doctrine of judicial immunity

---

[27] As noted, *see supra* note 23, there is perhaps a limited exception to this. As to a small subset of Williams' § 1983 or *Bivens* claims, in the event he is successful in challenging his conviction in habeas, he may still be able to pursue those claims.

bars his claims against them.[28] (Doc. 18, #101–03). Williams objects that "the Judicial defendant [sic] [d]oes not have [a]bsolute[] [i]mmunity [a]nd all claims against him could not be dismissed, [b]ecause they acted in a non-judicial capacity in absence of all jurisdiction."[29] (Doc 23, #163). Williams is wrong on both fronts.

Judges are immune in suits for money damages like the present case. *Mireles v. Waco*, 502 U.S. 9, 9 (1991). "[J]udicial immunity is an immunity from suit, not just from ultimate assessment of damages … [and is] not overcome by allegations of bad faith or malice." *Id.* at 11. There are only two instances in which judicial immunity falters: "First, a judge is not immune from liability for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity." *Id.* The two factors that courts consider in evaluating whether a judge's action constitute a judicial act are: (1) "the nature of the act itself" and "whether it is a function normally performed by a judge"; and (2) "the expectations of the parties." *Stump v. Sparkman*, 435 U.S. 349, 362 (1978). The issuance of search warrants, for example, is a quintessential judicial act. *See Mireles*, 502 U.S. at 13. "Second, a judge is not immune for actions, though judicial in nature,

---

[28] Williams also mentions Magistrate Judge Bowman is his objection memorandum, but she is not a defendant here. (*See* Doc. 23, #181).

[29] Most of Williams' objection consists of similar conclusory statements. (*See, e.g.*, Doc. 23, #181 ("Magistrate Judge Stephen [sic] Bowman, Karen Litkovitz, and District Judge Barrett lost their immunity by acting nonjudicially and in the clear absence of all jurisdiction."), #182 ("Hamilton county Municipal Judge Curt Kissinger who alleged [sic] signed the illegal search warrants after they were executed also lacked personal and subject-matter jurisdiction[.]"). Plaintiff also goes off on several irrelevant tangents while objecting to this finding: (1) allegations about Judge Kissinger's alleged bailiff; (2) requests for an evidentiary hearing regarding an allegation that Defendant Baker forged Judge Kissinger's signature on search warrants; and (3) allegations that the "Magistrate Judge and District Judge have violated Fed. R. Crim. P. 3, 4, 5, 9, 10, and 11." (Doc. 23, #165). These are not objections related to the present inquiry; the Court will not indulge these additional allegations.

taken in the complete absence of all jurisdiction." *Id.* at 12. This happens only when a judge "knows that he lacks jurisdiction, or acts despite a clearly valid statute or case law expressly depriving him of jurisdiction." *Smiles v. Royster*, No. 18-1440, 2018 WL 4998196, at *2 (6th Cir. Oct. 1, 2018) (quoting *Mills v. Killebrew*, 765 F.2d 69, 71 (6th Cir. 1985)).

Neither exception applies here. The alleged actions taken by the three officers of the court named here are judicial acts and each Defendant clearly acted well within the bounds of their respective jurisdictional grants.

Start with the judicial act inquiry. Williams' Complaint challenges the validity of various acts taken by Municipal Judge Kissinger, Magistrate Judge Litkovitz, and Judge Barrett. (*See, e.g.*, Doc. 1 ¶ 16, #4 ("[Judge] Kissinger does not have authority to issue [sic] county search warrant because he's a traffick [sic] Judge with limited jurisdiction. Both warrants were unlawful."); *id.* ¶ 25, #6 ("Defendant John Pearson conspired with Magistrate Judge Karen L. Litkovitz to sign the complaint for plaintiffs [sic] arrest without probable cause a [sic] was based off stale fabricated information."); *id.* ¶¶ 30, 35, 40–41, 56–60, #6–8, 11 (describing Judge Barrett's determinations related to motions, admissibility, and evidentiary issues). The issuance of search or arrest warrants, deciding motions, and determining admissibility or evidentiary issues are all functions normally performed by judges.[30]

---

[30] Williams says that "the judicial officers knew that there [sic] ex parte agreement to issue a[n] arrest warrant and [sic] hold pre-trial detention without probable cause and to deny all plaintiff's motions and to not apply Sixth Circuit precedent was not normal judicial functions[.]" (Doc. 23, #180). But as described above, the issuance of arrest warrants, determinations of pre-trial detention, and decisions on motions are all, indeed, normal

31

All three Judges had jurisdiction as well. The district court in Williams' underlying criminal case, for example, correctly explained why it had jurisdiction in response to an earlier challenge from Williams in the criminal case—"federal courts have jurisdiction over federal crimes. … [Williams] was charged with violating federal law in the Southern District of Ohio; therefore, venue and jurisdiction are proper." *Williams*, 2018 WL 4856536, at *8 (citing 18 U.S.C. § 3231; *United States v. Allen*, 954 F.2d 1160, 1165–66 (6th Cir. 1992)). As for Municipal Judge Kissinger, Ohio law provides municipal courts with a broad grant of jurisdiction over criminal cases. *See* Ohio Rev. Code § 1901.20(A)(1), 20(B). Williams argues that Ohio Revised Code § 1907.01 places a limit on this grant, but that statute discusses the limits to the jurisdiction of county courts, which are distinct from municipal courts. (Doc. 23, #164); Ohio Rev. Code § 1907.01 ("The county court shall have jurisdiction throughout a county court district that shall consist of all territory within the county *not* subject to the territorial jurisdiction of any municipal court." (emphasis added)). And his claim that the arrest warrant was outside the scope of the "Municipal Court's territorial area" is just wrong. (Doc. 23, #164). He concedes that his "residence was in Springfield Township." (*Id.*). Springfield Township is located within Hamilton County, and "[t]he Hamilton county municipal court has jurisdiction within Hamilton county." Ohio Rev. Code § 1901.02(B).

---

judicial functions. It may help to give some examples of nonjudicial acts. For example, when a judge acts as prosecutor. *See, e.g.*, *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984) (finding that a judge's initiation of criminal proceedings against fathers with overdue child support payments constituted nonjudicial acts). Another example is when a judge acts administratively. *See, e.g.*, *Mann v. Conlin*, 22 F.3d 100, 104 (6th Cir. 1994) (describing examples of "administrative decisions by judges [] open to suit").

The bottom line is that "[d]isagreement with the action taken by the judge … does not justify depriving that judge of his immunity." *Stump*, 435 U.S. at 363. While Williams disagrees with the actions that officers of the court (and others) took against him in his underlying criminal case, that does not mean his claims against them can proceed. Accordingly, judicial immunity requires the Court to dismiss former Judge Curt Kissinger, United States District Court Judge Michael R. Barrett, and United States Magistrate Judge Karen L. Litkovitz as Defendants in this action with prejudice.

### 5. Absolute Immunity Shields Assistant United States Attorney Kadon.

Williams objects to the Magistrate Judge's finding that his claims against Assistant United States Attorney Kadon must be dismissed because of absolute prosecutorial immunity.[31] (Doc. 18, #103; Doc. 23, #160–62, 171, 176–79). The Magistrate Judge correctly assessed that there is only a single allegation concerning AUSA Kadon—"Defendant[] Kadon presented perjury and Fraud on the Court at Plaintiffs [sic] October 18, 2017 grand jury hearing." (Doc. 1, #6). She was also correct that prosecutorial immunity upends that allegation.

A prosecutor's "activities [that are] intimately associated with the judicial phase of the criminal process" receive absolute prosecutorial immunity from suit under § 1983 or *Bivens*. *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976); *see also Koubriti v. Convertino*, 593 F.3d 459, 466–67 (6th Cir. 2010). Critically, "prosecutors

---

[31] As explained above, there are no allegations concerning AUSA Taiwo, so the claims against her must be dismissed. *See supra* note 12.

have absolute immunity [for] … 'the knowing use of false testimony before the grand jury[.]'" *Koubriti*, 593 F.3d at 467 (quoting *Burns v. Reed*, 500 U.S. 478, 485 (1991)). Here, Williams alleges exactly that, so his claims against AUSA Kadon cannot proceed.

Rather than seeking to resurrect that claim, Williams uses his objection on this issue as an opportunity to raise new allegations against Kadon—allegations not found in the Complaint.  (*See, e.g.*, Doc. 23, #160–62). And from these additional facts he argues that "Kadon['s] actions were not traditional function[s] as an advocate." (*Id.* at #160). But, while Williams is correct that a prosecutor's "functions which are more 'investigative' or 'administrative' in nature, because they are more removed from the judicial process, are subject only to qualified immunity," as noted, his Complaint contains a single allegation directed at Kadon and that allegation falls within the bounds of prosecutorial immunity. *Koubriti*, 593 F.3d at 467. As for his new allegations—"these … were not before the Magistrate Judge [and so] are not properly raised in an objection," and in any event "Plaintiff makes no attempt to tie [his] hodge-podge of convoluted factual allegations to any cause of action." *Hodges v. Rufus*, No. 2:24-cv-141, 2024 WL 469403, at *1 (S.D. Ohio Feb. 7, 2024). Accordingly, the Court dismisses the claims against Kadon on these grounds as well.[32]

---

[32] The grounds for dismissal addressed in this section present what perhaps could be a fixable pleading defect. But in light of other problems, explained below, the Court will not allow Williams leave to amend his Complaint as to attorney Kadon at this time.

### 6. Williams' Attorneys Did Not Act under Color of Law.

Public defenders, appointed counsel, and retained attorneys all have one thing in common—they do "not act under color of [] law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." *Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981); *see also White v. Robertson-Deming*, 9 F. App'x 418, 419–20 (6th Cir. 2001); *James v. Mann*, 234 F.3d 1268, 2000 WL 1679505, at *1 (6th Cir. Oct. 30, 2000) (Table). That's important because to prevail on a § 1983 or *Bivens* claim, a plaintiff must prove that a constitutional "deprivation was caused by a person acting under color of law." *Robertson*, 753 F.3d at 614. As a result, the Magistrate Judge recommends that the Court dismiss Williams' claims against the three defense attorneys named as Defendants (Richard Monahan, Clyde Bennett, and Bill Gallagher) who represented Williams at various times in his underlying criminal case. (Doc. 18, #104).

There is one potential wrinkle though. The Supreme Court has stated that "an otherwise private person acts 'under color of' state law when engaged in a conspiracy with state officials to deprive another of federal rights." *Tower v. Glover*, 467 U.S. 914, 920 (1984) (citing *Dennis v. Sparks*, 449 U.S. 24, 27–28 (1980)). Seeking to latch onto that exception, Williams objects to the Magistrate Judge's recommendation by rehashing and elaborating on his belief that his defense attorneys conspired with the government. (Doc. 23, #168–70, 183–85; *see also* Doc. 1, #6–8). That is not a bad tack—Williams is correct that allegations of conspiracy may "cast the color of [] law over" a defense attorney's actions. *Tower*, 467 U.S. at 919 (quotations omitted). But the problem is that his Complaint does not *assert* a conspiracy claim against any of

35

the defense attorneys. (*See* Doc. 1, #9–17). The only conspiracy claim Williams expressly asserts is directed against the fifteen law enforcement defendants. (*Id.* ¶ 96, #17). Moreover, even if the Court construed the Complaint as asserting a conspiracy claim against the defense attorneys, the Court nonetheless would dismiss the claim because the factual allegations relating to any potential conspiracy involving the defense attorneys are conclusory at best and do not plausibly allege that they conspired with the government. (*See, e.g.*, Doc. 1 ¶ 32, #6 ("Gallagher then conspired with Defendants to prosecut[e] plaintiff[.] Gallagher filed unprofessional motion which denied plaintiff effective assistance.")). Indeed, the conduct to which Williams alludes in his objection as evidence of the "conspiracy" consists merely of normal actions that defense attorneys regularly take, for example, moving to withdraw. (Doc. 23, #168).

As a result, the Court finds that Williams fails to assert a plausible conspiracy claim against the defense attorneys, in turn meaning they did not act under color of law in representing him. In short, the Court rejects Williams' objection and dismisses the claims against Monahan, Bennett, and Gallagher with prejudice on this additional ground.

### 7. Williams Makes No Factual Allegations Against Fourteen Named Plaintiffs.

The Court also agrees with the Magistrate Judge's final finding that the allegations against the law enforcement Defendants in Count VII, broadly asserting ten federal statutory violations, are deficient. (Doc. 1, #16–17). Simply, Williams' allegations here are so barebones that it would be impossible for any court to "draw

the reasonable inference that the defendant[s are] liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.[33] So the Magistrate Judge was correct to conclude that in these types of cases our circuit has consistently required plaintiffs to "demonstrate what *each* defendant did that violated the asserted constitutional right" in their complaints. (Doc. 18, #105 (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (emphasis in original))). *See also Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) ("Merely listing names in the caption of the complaint and alleging constitutional violations in the body of the complaint is not enough."); *White v. Tennessee*, No. 2:14-cv-115, 2014 WL 3908203, *2 (E.D. Tenn. Aug. 11, 2014) (dismissing 18 defendants from the case when plaintiff's complaint contained "no facts, much less sufficient facts to state a claim for relief" involving them, even when plaintiff intended to amend the complaint to include additional allegations).

Williams objects that "[t]here are Factual Allegations Against Fourteen Named Defendants." (Doc. 23, #171). But he is wrong. And even though Williams urges the Court to "construe the complaint in the light most favorable to" him, (*id.* at #185), the Magistrate Judge correctly noted that "where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to pro se complaints." (Doc.

---

[33] And, for that reason, the Court need not determine whether any of the recited statutes creates a private right of action that would be enforceable under § 1983. *Barry v. Lyon*, 834 F.3d 706, 716 (6th Cir. 2016) ("To show that a statutory provision creates a federal right for a particular class of persons, enforceable under § 1983, a plaintiff must demonstrate: (1) that Congress intended the provision to benefit the plaintiff, (2) that the protected right is sufficiently definite for courts to enforce, and (3) that the statute imposes a binding obligation on the states using mandatory, rather than precatory, terms.").

18, #105 (quoting *Catanzaro v. Harry*, 848 F. Supp. 2d 780, 791 (W.D. Mich. 2012))).
Simply, Count VII warrants dismissal for this additional reason.

*      *      *

Altogether, the Court concludes that Williams' Complaint should be dismissed
in its entirety. But that raises the question of whether that dismissal should be with
or without prejudice. The Magistrate Judge recommended dismissal with prejudice
for all Williams' claims. (Doc. 18, #105). The Court does not fully agree. As noted,
Williams' claims are *Heck*-barred. And the Sixth Circuit has explained that "[w]hen
*Heck* bars a § 1983 claim against an officer, the court should dismiss the claim
without prejudice so that the § 1983 plaintiff *may refile* the suit if a court later
invalidates the prior conviction." *Chaney-Snell*, 98 F.4th at 710 (emphasis omitted
and added). But that general rule also requires further clarification in the context of
this case—Williams may not refile *every* claim he asserts here even if a court were to
invalidate his prior conviction. *See supra* note 23. In particular, Williams' claims
directly concerning the events on August 17, 2017, (Counts I, IV, and V) would not
receive the benefit of *Heck*'s deferred-accrual rule—they are time-barred regardless
of the outcome of Williams' habeas case. So even if a court were to invalidate Williams'
conviction, he could not refile a suit with these claims. Accordingly, the Court
**DISMISSES WITH PREJUDICE** Counts I, IV, and V of Plaintiff's Complaint (Doc.
1).

In contrast, as to Counts II, III, VI, and VII, *Heck*'s deferred-accrual rule either
does, or at least might, apply. As to those claims, there are no amendments that

Williams can currently make to remedy the deficiencies associated with these claims, but if he were to succeed in challenging his conviction that may change. So the Court **DISMISSES WITHOUT PREJUDICE** Counts II, III, VI, and VII of Plaintiff's Complaint (Doc. 1). That said, the Court will not allow Williams to amend his Complaint unless or until that time comes.

Then there is the separate impact of the judicial immunity ruling described above. On that front, the Court reiterates that it **DISMISSES WITH PREJUDICE** any claims against Defendants former Judge Curt Kissinger, United States District Court Judge Michael R. Barrett, and United States Magistrate Judge Karen L. Litkovitz. The Court also **DISMISSES WITH PREJUDICE** any claims against Defendants Richard Monahan, Clyde Bennett, and Bill Gallagher since these defense attorneys did not act under color of law when representing Williams.

## B.   Request for Stay Pending Resolution of § 2255 Motion

Williams alternatively requests that the Court stay these proceedings pending resolution of his motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. (Doc. 23, #153). "The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes in its docket with economy of time and effort for itself, for counsel and for litigants, and the entry of such an order ordinarily rests with the sound discretion of the District Court." *FTC v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 626–27 (6th Cir. 2014) (quotation omitted).

A stay is not proper here. "Granting an indefinite stay … until [Williams'] speculative post-conviction proceedings are concluded would be unfairly prejudicial

to" the Defendants. *Hobson v. Turner*, No. 3:18-cv-P187, 2020 WL 967347, at *2 n.2 (W.D. Ky. Feb. 27, 2020) (cleaned up). True, the Supreme Court indicated in *Wallace v. Kato* that granting a stay is proper in a narrow set of circumstances: when there is (1) a forthcoming or pending criminal prosecution, but (2) a plaintiff brings a civil claim, that is (3) intertwined to that criminal proceeding, and (4) would *not receive* the benefit of *Heck*'s deferred-accrual rule (that is, the claim would be time-barred if it were not filed before the initiation or completion of the criminal proceedings). *See* 549 U.S. at 393–94. That narrow rule does not support Williams' request for a stay here. That is because Williams did not file a civil action before the limitations period expired for claims where *Heck*'s deferred-accrual rule does not apply (Counts I, IV, V). So *Kato* does not counsel in favor of a stay as to those claims. For the other claims (Counts II, III, VI, VII), *Heck*'s deferred-accrual rule applies, so a stay under *Kato* would not be necessary or appropriate. Rather, Williams can refile at any point in the limitations period *after* he successfully challenges his conviction in habeas (if that in fact occurs). Accordingly, the Court will not grant a stay. Williams may refile suit on the claims the Court has dismissed without prejudice if his habeas claim resolves in his favor.

## C.   Other Outstanding Motions

There are two remaining motions on the docket. In the interest of finality and judicial economy, the Court reviews and decides them here, rather than relying on the Magistrate Judge's disposition. First, Williams' Motion To Consolidate Supplemental Complaint (Doc. 17), which requests the Court "to consolidate a

separate complaint that involves. [sic] Dale Taylor, Kenneth Baker et. al in case 1:23-cv-00002 with the case no. 1:22-cv-769 as refiling by consolidating both complaints." (*Id.* at #77). As previously mentioned, this Court dismissed Williams' complaint in that action for failure to prosecute. (Op. & Order, *Williams v. Taylor*, Case No. 1:23-cv-2 (S.D. Ohio Oct. 30, 2023), Doc. 8). The Court will not revive that case through consolidation—essentially what Williams' requests. For that reason, the Court **DENIES** Williams' Motion To Consolidate Supplemental Complaint (Doc. 17).

Second, Williams' motion to withdraw order denying plaintiff's motion letter, (Doc. 29). This relates to Williams' request that mail sent from the Court "have a raised seal stamped on legal mail" and statement that he had not received legal mail related to this case since July 2024. (Doc. 27, #199). The Magistrate Judge directed the Clerk to send Williams a printout of the docket in this case (which would have indicated to Williams that he wasn't missing any mail from this case) and denied the request to include a raised seal because of lack of need or authorization to do so. (Doc. 28, #202). Williams now asks the Court to "provide that he will get any future Legal Mail from this court on time to prevent any future delay's for any response time, because without the proper marking the BOP mail room clerk's [sic] will consider plaintiff's correspondence between the court as general mail and will be opened and read and copied and not lodge [sic] as legal mail[.]" (Doc. 29, #203). The Magistrate Judge already directed "the Clerk of Court to mail all filings to Williams in envelopes identifying the Clerk of Courts of the United States District Court for the Southern District of Ohio as the sender and to write the phrase 'SPECIAL LEGAL MAIL—

Open Only in the Presence of the Inmate' on the front of the envelopes.'" (Doc. 26, #198). So Williams' concerns already have been addressed. Williams also submitted this motion just fifteen days after the Magistrate Judge's Order, belying his claims of delay. (*See* Doc. 28; Doc. 29, #204). The Court therefore **DENIES** Plaintiff's motion to withdraw order denying plaintiff's motion letter, (Doc. 29).

## CONCLUSION

For the reasons discussed above, the Court **ADOPTS IN PART** the Magistrate Judge's Report and Recommendation (Doc. 18), with some differences in reasoning, but with nearly the same result. The Court **DISMISSES WITH PREJUDICE** Counts I, IV, and V and **DISMISSES WITHOUT PREJUDICE** Counts II, III, VI, and VII of Plaintiff's Complaint (Doc. 1). The Court further clarifies that it **DISMISSES WITH PREJUDICE** the following Defendants named in Plaintiff's Complaint: former Judge Curt Kissinger, United States District Court Judge Michael R. Barrett, United States Magistrate Judge Karen L. Litkovitz, Richard Monahan, Clyde Bennett, and Bill Gallagher.

The Court also **DENIES** Plaintiff's Motion To Consolidate Supplemental Complaint (Doc. 17), **DENIES** Plaintiff's Motion To Supplement Objection: 2 (Doc. 24), **STRIKES** Plaintiff's Memorandum to objection 2 that was Supplemental (Doc. 25), and **DENIES** Plaintiff's motion to withdraw order denying plaintiff's motion letter, (Doc. 29). The Court **DIRECTS** the Clerk to enter judgment and to **TERMINATE** this case on its docket.

**SO ORDERED.**

February 6, 2025
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**